## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 13 2015, 9:33 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kristin R. Willadsen
Muncie, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of: I.B., B.B., and W.B.

and

M.T.,

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

February 13, 2015

Court of Appeals Case No. 18A02-1406-JT-446

Appeal from the Delaware Circuit Court
The Honorable Kimberly S. Dowling
The Honorable Brian Pierce
Cause Nos. 18C02-1308-JT-21
18C02-1308-JT-22
18C02-1308-JT-23

**Bailey, Judge.**

# Case Summary

[1]     M.T. ("Mother") appeals the termination of her parental rights to I.B., B.B., and W.B. ("the Children"), upon the petition of the Delaware County Department of Child Services ("the DCS").  She presents the sole issue of whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision.  We affirm.

# Facts and Procedural History

[2]     In 2011, the Children were adjudicated Children in Need of Services ("CHINS"), partially because of Mother's abuse of alcohol.  Mother participated in services and the Children were returned to her care in December of 2011.  On November 16, 2012, Mother was arrested after her two-week drinking binge caused one of the Children to contact relatives.  The DCS placed the Children with family members[1] and, on November 26, 2012, the Children were again found to be CHINS.

[3]     Mother participated in some alcohol treatment services, but continued to relapse.  During the pendency of the CHINS proceedings, Mother was arrested five times.  Also, the DCS received reports that Mother had twice been admitted, in an intoxicated state, to a local hospital.

---

[1] Father was incarcerated on a driving while intoxicated charge.

[4] On August 12, 2013, DCS family case manager Susan Brown ("Brown") went to Mother's home and found her intoxicated. Mother admitted having been on a drinking binge for two and one-half days. The next day, the DCS petitioned to terminate Mother's parental rights.

[5] On April 11, 2014, an evidentiary hearing was conducted. Mother was not present. On May 23, 2014, the trial court entered findings of fact, conclusions of law, and orders terminating Mother's parental rights.[2] She now appeals.

# Discussion and Decision

## Standard of Review

[6] Our standard of review is highly deferential in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). This Court will not set aside the trial court's judgment terminating a parent-child relationship unless it is clearly erroneous. *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997). When reviewing the sufficiency of the evidence to support a judgment of involuntary termination of a parent-child relationship, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

---

[2] By this time, the DCS plan for the Children was reunification with their father.

## Requirements for Involuntary Termination of Parental Rights

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence in order to terminate a parent-child relationship:

(A) that one (1) of the following is true:

(i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.
(ii)  A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
(iii)  The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[9] If the court finds that the allegations in a petition described above are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). A trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.*

## Analysis

[10] Mother contends that insufficient evidence supports the termination decision. She does not challenge the trial court's determinations pursuant to Sections 31-35-2-4(b)(2)(A) (removal from parent), (C) (best interests), or (D) (satisfactory plan). She challenges the determinations relating to Sections 31-35-2-4(b)(2)(B) (reasonable probability conditions will not be remedied or relationship poses a threat to child's well-being).

[11] Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore the court needed only to find that one of the three requirements of subsection (b)(2)(B) had been established by clear and convincing evidence. *See L.S.*, 717 N.E.2d at 209. Here, Mother presents an argument only as to whether the DCS established, by clear and convincing evidence, that there is a

reasonable probability that the conditions resulting in the removal or reasons for placement outside the home will not be remedied. *See* I.C. § 31-35-2-4(b)(2)(B)(i). The relevant statute does not simply focus on the initial basis for removal for purposes of determining whether a parent's rights should be terminated, "but also those bases resulting in the continued placement outside the home." *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*.

[12] Initially, the DCS removed the Children from Mother's care because of Mother's alcohol abuse. Brown testified that one of the Children had called a relative to complain that Mother had been drinking daily and driving them around while she was intoxicated. The Children reported being fearful. When the DCS became involved, the Children's father was in jail. During the CHINS proceedings, Mother was arrested on five occasions. Some, if not all, of the arrests took place while Mother was intoxicated.

[13] Mother availed herself of some of the services offered to her, but continued to struggle with alcohol abuse. Al Adams ("Adams"), an addictions counselor who saw Mother in 2011, testified that he had insisted upon Mother going to an intensive outpatient program but she "had repeated relapses." (Tr. 27.) She was then referred to and admitted for inpatient treatment at Turning Point. She completed an aftercare group program on January 9, 2012. Adams testified that he began to work with Mother again in May of that year, but she had both "repeated relapses" and "drug screens that she was positive on." (Tr. 28.) He again referred Mother for inpatient treatment. She went to Tara Treatment Center in September of 2013. Less than one month after her discharge, Mother

tested positive for alcohol. After warnings and confrontations regarding Mother's repeated relapses and perceived dishonesty, Adams discontinued working with her.

[14] Therapist Lacey Dewsbury ("Dewsbury"), who had provided services to Mother and the Children, testified that Mother had shown a "lack of progress in showing stability and changing her patterns of unstable relationships [and] impulsive choices." (Tr. 34.) According to Dewsbury, Mother had engaged in a pattern of lying that had damaged her family relationships to the extent that the Children would try to be polite but "no longer wanted to address things." (Tr. 35.) For those reasons, family therapy was stopped. Mother had also reported to Dewsbury that Mother had elected to discontinue taking prescribed medication to treat her borderline personality disorder.

[15] Muncie Police Officer Damon Stovall testified that he encountered Mother at the Ball Memorial Hospital emergency room on December 6, 2013. Mother appeared injured and intoxicated; she requested that Officer Stovall not tell Brown about the hospitalization. Muncie Police Officer Christopher Duncan testified that he had summoned emergency services for Mother, after she had allegedly been battered by a friend's husband after they had drank alcohol together and tempers flared. Officer Duncan secured Mother's vehicle and found a bottle of alcohol in it, along with several prescription bottles.

The DCS presented sufficient evidence from which the trial court could conclude that there was a reasonable probability that the conditions resulting in the removal or reasons for placement outside the home would not be remedied.

# Conclusion

The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

Affirmed.

Robb, J., and Brown, J., concur.